UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION AT LEXINGTON

CIVIL ACTION NO. 1998-431 - WOB

KEITH RENE GUY, SR.,
ET AL.                                              PLAINTIFFS

VS.                **MEMORANDUM OPINION AND ORDER**

LEXINGTON FAYETTE
URBAN COUNTY GOV'T,
ET AL.                                              DEFENDANTS

This matter is before the Court on the Roe plaintiffs' motion to quash attorneys' lien (Doc. 652) and the Doe plaintiffs' motion to hold settlement funds (Doc. 666).

The Court held a telephonic hearing on these motions on Thursday, January 23, 2014. Charles Arnold, Gayle Slaughter, and William Huffman represented the Roe plaintiffs. Sharon and Jim Morris represented the Doe plaintiffs. Keith Moorman represented defendant LFUCG. Court reporter Sandy Wilder recorded the proceedings.

Having heard the parties, the Court now issues the following Memorandum Opinion and Order.

*Procedural Background*

An understanding of the current fee dispute among counsel requires a review of certain events that have transpired over the course of this case.

This case was filed on October 15, 1998, as a putative class action.[1] In January 2000, the four named plaintiffs reached a settlement with defendants. Shortly thereafter, the Court approved the settlement, but it did not give notice thereof to the members of the putative class.

On March 3, 2000, attorney Gayle Slaughter entered her appearance on behalf of the remaining plaintiffs (Doc. 71), then the single group comprising the putative class. At that time, Slaughter entered into contingency fee agreements with her clients.[2]

Later in 2000, Slaughter and Huffman solicited the involvement of Lexington attorneys Sharon and James Morris. Slaughter submitted to the Morrises a proposed "Agreement and Contingency Fee Arrangement," the key terms of which were that: (1) the Morrises would be retained as co-counsel and, although "subordinate" to Slaughter and Huffman, would nonetheless be denominated "lead counsel" in court filings; (2) the agreement did not create any contractual relationship between the Morrises and the plaintiffs; (3)

---

[1] A complete account of the labyrinth-like procedural history of this case is found in *Guy v. Lexington-Fayette Urban County Gov't*, 488 F. App'x 9 (6th Cir. 2012) and *Doe v. Lexington-Fayette Urban County Gov't*, 407 F.3d 755 (6th Cir. 2005).

[2] Also affiliated with Slaughter was attorney William L. Huffman, although he was not added as counsel of record until years later. *See* Docket Entry of 11/14/06.

the Morrises would be paid one-third of the 40% contingency fee that Slaughter and Huffman would receive from any recovery by their clients; and (4) in the event that the Morrises did not continue in the case, they would be entitled to recover a fee proportional to the time and effort they expended in the case. (Doc. 652-2).

The Morrises maintain that they never saw this agreement and that they were under the impression that they were "involved in" the contingency fee contracts between Slaughter and the plaintiffs. At the recent hearing, Slaughter stated that it was her recollection that some contingency arrangements were proposed by the Morrises, but that no agreement was reached.

In any event, it is undisputed that the written agreement allegedly proffered by Slaughter was never signed, and counsel otherwise never memorialized, or indeed ever reached, a meeting of the minds as to the financial terms of their collaboration.

From 2000 forward, the Slaughter/Huffman group and the Morrises all worked on behalf of the proposed class in various capacities.

In the meantime, appeals from this Court's rulings relating to the settlement and motions to intervene by other individuals were taken to the United States Court of

Appeals for the Sixth Circuit.

On May 5, 2005, the Sixth Circuit held that the district court had abused its discretion in not giving notice of the settlement to the putative class. *See Doe*, 407 F.3d at 763-64. The Sixth Circuit thus vacated the judgment in this matter and remanded the case to the district court.

Following remand, the case was transferred to the undersigned.

In the meantime, tensions had developed between Slaughter/Huffman and the Morrises regarding their respective roles in the litigation. Letters detailing these tensions were exchanged during the summer of 2006, (Docs. 652-3, 652-4, Doc. 660-2), and numerous vituperative motions were filed containing accusations of misconduct on both sides. In particular, Slaughter contended that the Morrises had been dealing directly with her clients and attempting to "steal" them.

On July 13, 2006, Slaughter sent a letter to the Morrises stating that she was "discharge[ing] your firm from service to us in your capacity as lead co-counsel" in the case. (Doc. 660-3). Slaughter further stated, "It is in the best interest of my and Larry's clients (the John and Jane Does 1-95) that you submit your final hourly bill

4

to us for services rendered and costs to date, for payment in the event that we prevail and recover damages." (*Id.*).

On September 25, 2006, attorney Barbara Bonar, who by then had become associated as co-counsel with Slaughter and Huffman, wrote a letter to the Morrises. (Doc. 660-1). This letter came on the heels of apparent attempts by Bonar to mediate, informally, the dispute between Slaughter and the Morrises. In the letter, Bonar noted that Jim Morris had informed her that the Morrises were withdrawing from the case, and she stated: "Gayle Slaughter and Larry Huffman acknowledge that you performed significant legal services for the case (the 1011 hours you submitted) for which you should be compensated." (*Id.*).

On November 17, 2006, the Court held a status conference to address this dispute, as well as other issues. As a result of discussions at the conference, the Court directed that each set of attorneys – the Morrises on one side and Slaughter/Huffman on the other – consult with the individual plaintiffs and ask them to choose which attorneys they wished to represent them, and that each side would execute retainer agreements with their clients. *See* Doc. 191 (Transcript of 11/17/06 Conference).

In its Order following the hearing, the Court directed that one set of plaintiffs would be denominated the "Does,"

5

represented by the Morrises, and that Slaughter and Huffman's clients would be called the "Roes." (Doc. 182).

Thereafter, counsel tendered an Agreed Order, which the Court signed and entered on December 14, 2006, striking over two dozen motions and other filings relating to the above dispute. (Doc. 183).

Subsequently, counsel filed two separate amended complaints on behalf of the plaintiffs they represented (Docs. 184, 185), and the case moved forward.

A year later, on December 17, 2007, plaintiff Rex Roe #92 retained Slaughter and Huffman as his attorneys and joined as a plaintiff in this case. (Doc. 653-1) (Affidavit of Rex Roe #92).

In May and August 2009, the Court ruled that the majority of the plaintiffs' claims were time-barred and that class certification was not appropriate. (Docs. 382, 410, 411). In September 2009, the Court agreed to certify these rulings to the Sixth Circuit, and on February 8, 2010, the Sixth Circuit granted the petition to hear the appeal.

This case remained stayed until May 2, 2012, when the Sixth Circuit issued an opinion affirming this Court's rulings as to the statute of limitations and class certification. *Guy v. Lexington-Fayette Urban County*

*Gov't*, 488 F. App'x 9 (6th Cir. 2012).

On March 27, 2013, the Morrises filed a Notice of Attorneys' Lien against any prospective judgment recovered in favor of the Roe plaintiffs. (Doc. 632).

Following completion of summary judgment briefing, this Court granted the LFUCG's motions for summary judgment as to all claims except the § 1983 claims of two plaintiffs who alleged that their abuse occurred while Ron Berry was employed by the LFUCG in connection with a summer lunch program. (Doc. 638) (May 30, 2013 Opinion and Order).

Following these rulings, significant mediation efforts by the assigned United States Magistrate Judge resulted in settlements with both Roe and Doe plaintiffs.

Finally, on November 21, 2013, the Roe plaintiffs filed the current motion to quash the Morrises' attorneys' lien, arguing that the Morrises are not entitled to any compensation from the Roes' settlements or separately from Slaughter and Hoffman.

### *Analysis*

In the Court's view, when the dispute among counsel came to a head in late 2006 and the two camps retained their own clients and parted ways for representation purposes, this constituted a resolution of the matter and an acknowledgment that counsel's compensation would derive

7

only from any judgment or settlement received by their respective clients after that time, pursuant to their retainer agreements.

The Morrises urge that they spent great time and effort that inured to the benefit of plaintiffs who ended up as Roes, that is, clients of Slaughter and Huffman. True as that may be, the same may be said of work performed by Slaughter and Huffman that inured to the benefit of plaintiffs who, in 2006, chose the Morrises as their counsel. Indeed, under the Morrises' reasoning, it could be said that Slaughter and Huffman would be entitled to some portion of the Does' settlement. The Court does not accept this construction of the matter, however.

Further, while the Morrises place great emphasis on statements by Slaughter and Bonar during counsel's dispute in 2006 acknowledging that the Morrises should be compensated for legal services they had performed in the case, it is clear from the context of these communications that this assertion was premised on the understanding that the Morrises were withdrawing and would no longer be involved in the case. This is consistent with Kentucky law. *See Baker v. Shapero*, 203 S.W.3d 697, 699 (Ky. 2006) (attorney discharged without cause from representation is entitled to fee recovery on *quantum meruit* basis).

However, the Morrises did not withdraw.  Instead, they gathered the plaintiffs who chose them as their attorneys, entered into retainer agreements, and moved forward, thereby accepting the risk inherent in all contingency fee arrangements: the attorney recovers if, and only if, the client recovers.

Further, it bears emphasizing that the Morrises' claim to settlement proceeds received by Rex Roe #92 is particularly flawed because he did not appear as a plaintiff in this case until December 2007, over a year after the counsel split.  At that time, he retained Slaughter and Huffman.  Thus, he was never a client of the Morrises under any view of the facts.

Finally, the Court notes that counsel should be cognizant of their obligations under Kentucky Supreme Court Rule 3.130(1.5)(c) with respect to the settlements now being implemented.

Therefore, having reviewed this matter, and the Court being sufficiently advised,

**IT IS ORDERED** that:

(1)  The Roe plaintiffs' motion to quash attorneys' lien (Doc. 652) be, and is hereby, **GRANTED**; and

(2)  The Doe plaintiffs' motion to hold settlement funds (Doc. 666) be, and is hereby, **DENIED**.

This 29th day of January, 2014.



Signed By:
William O. Bertelsman  WOB
United States District Judge

TIC: 45 min.